Engineers Federal Credit Union, v. Home Depot, Inc. Good morning, may it please the Court, Carrie Dawson for the Home Depot. The District Court abused its discretion by applying a 1.3 multiplier to Class Counsel's lodestar for litigation risk and direct contravention of the U.S. Supreme Court's decision in City of Burlington v. Daigle, which held that enhancement for contingency litigation risk is not permitted under the fee-shifting statutes. There are so many problems with this order that I'm kind of perplexed about where to begin with it. It's your contention that we can't even really provide meaningful appellate review for the fee award, isn't that right? That is one of our contentions, Your Honor. However, we believe that under ACLU v. Barnes, this Court can, using its own knowledge and expertise, reduce this fee award. And the problem, though, is, I mean, if the District Court hasn't really given us enough in its order to show us how it used the lodestar analysis, we would just have to do that basically on our own in the first instance. I mean, that's part of my problem. It does seem, but if we were to say we can't provide meaningful appellate review of this it's not a common fund. It is not a common fund, Your Honor. That is, you know, the Johnson factors ordinarily account for all the things that someone would say they want with a multiplier, and the District Court certainly didn't suggest enough to explain how a multiplier would be appropriate here. What more, really, would we need to say if we were going to send it back to the District Court to make the District Court do it right in the first instance? I think, Your Honor, the first thing that this Court would say to the District Court is, again, we believe that you can look at this award and reduce it, and utilize your own knowledge and expertise, because I think satellite litigation on attorney's fees is not something that we want. And therefore, if we start with the award of $15.3 million, again, in paragraph six, the Court did say specifically a multiplier of 1.3, the same multiplier that the Court applied in awarding fees in the Consumer Tract, is appropriate and justified in light of the quote, exceptional litigation risk, close quote, that class counsel took in litigating this case. Under City of Burlington v. Daigle, enhancement for contingency is not permitted, and therefore the $15.3 million should be reduced down to the LODESTAR $11,773,000, because as a matter of law, no multiplier . . . So, you're saying that we should then say the multiplier was inappropriate, but Home Depot concedes that that $11.-whatever-million fee award would be reasonable? No. That is not reasonable either. Okay, that's . . . This is the first cut, Your Honor, the first error applying the exceptional litigation risk multiplier. City of Burlington v. Daigle addresses that. My problem is kind of a chicken and egg problem, though, but when the District Court hasn't even really showed us enough for us to say that it really used a LODESTAR analysis in any way that we can meaningfully review, I don't know how we deal with it in the way that you're suggesting. I mean, it seems like it's got to start from the beginning, doesn't it? Well, Your Honor, the Court did state in Paragraph 3 that the Home Depot . . . that the Court adopted Home Depot's argument that the LODESTAR approach should be used in the first instance to calculate the amount of reasonable fees to compensate. Right, but then, as you contend, the District Court didn't show us enough to satisfy us that it actually did that. Right? Well . . . It says, I think Home Depot's right. We should use a LODESTAR analysis, but it doesn't really explain what the hourly rate it chose was, why it chose it, what the number of hours was, why it chose those, right? All the factors that you have to go through in the LODESTAR analysis, it just basically accepts everything the plaintiff saw your say without saying why. That is correct. The District Court did do that, and so I think the rule that we think should go down is that the contractual fee-shifting provision in the Class Action Settlement Agreement should be found to be the functional equivalent of a federal fee-shifting statute. The federal fee-shifting jurisprudence construing what constitutes a reasonable attorney's fee should apply here. That begins with Hensley, Bloom, and then Daig, specifically on the contingency issue, as well as Perdue. And as you note, the LODESTAR is . . . there's a strong presumption under U.S. Supreme Court precedent that the LODESTAR constitutes a reasonable attorney's fee. The LODESTAR includes most, if not all, of the relevant factors constituting a reasonable attorney's fee. No enhancement to the LODESTAR based upon factors subsumed in the LODESTAR calculation. An enhancement is for those rare and exceptional circumstances not present here. In addition, case law regarding . . . Highly unlikely to be present here, but my point, Ms. Dawson, is I don't even know how we can say much about that without it being an advisory opinion when the district court hasn't really done enough to show us it's done the Johnson analysis in the first place. Do you see my point? I see your point, Your Honor. But I want to give the court an alternative, and that is it can, under ACLU v. Barnes, and because we want to discourage satellite litigation, address the fee award today by deducting, removing the multiplier, and further deducting for the time spent pursuing the unsuccessful claim for a preliminary injunction. And when you look at the transcript, the plaintiff's attorney said $1.4 million in attorney's fees, and that was spent on an unsuccessful claim. In their motion for preliminary injunction, they sought to . . . Why do you say an unsuccessful claim? Wasn't there $2.25 million set aside for those claims? Pardon me, Your Honor. The ARO claims, that's what you're talking about. Yes, Your Honor. What you should look at is the preliminary injunction motion asked for a vacating of the releases and to stop the settlement implementation. That relief was not granted by the court. And the $2.25 million went to issuing banks who were not class members, right? The $2.25 million was set aside for banks that were part of the settlement class. Only $250,000 was claimed, but, and this is what Hensley states, the U.S. Supreme Court states that where the plaintiff achieved only limited success, the district court should award . . . Wait a minute. I thought, though, that the fact that they accepted those offers and released their claims, that meant that they ended up not being members of the settlement class, right? That is true with the exception of sponsored entities who did, in fact, accept the ARO and did, in fact, release their claims, but claimed that they could not make an informed decision because of communications that Home Depot had absolutely nothing to do with. But when you look at what they were seeking, and that's what Hensley focuses on, you can't just say, well, it was $2.25 million. You have to look at what they were seeking. They were seeking vacating of all the releases. They were seeking to stop the settlement process from going forward, and they failed. No, I thought it was only if it was misleading or oppressive. No, in the preliminary injunction motion, they say, vacate the releases that were the subject of misleading and coercive communications, but then their third relief was to stop the implementation of the settlement process. That was not qualified by if it was misleading or coercive. They said, stop the ARO process in its entirety, and they did not achieve that. What the district court basically did was it compensated class counsel for trying to enjoin their own putative class members from recovering more than a full reimbursement. That's precisely right, Your Honor. They were working against the class's interest, and they failed, and so the $1.4 million, that's the fees that they themselves stated were associated with the efforts to get this injunction, take the discovery. That should be taken off the top, Your Honor, and that should be reduced, and therefore we think a proper instruction back to the district court would be on these pure questions of law, reduce the award from $15.3 million to $11,773,000 because no multiplier could be awarded as a matter of law, further reduce that $11,773,000 by $1.4 million to $10,373,000 to account for the discrete, unsuccessful preliminary injunction and discovery related to SANE. And then finally, a further reduction is warranted to account for the fees associated with soliciting plaintiffs. That results in an award of $8,373,000. So in the alternative, Judge Pryor, we believe that— That's your request for us, that you concede that that $8 point whatever million would be a reasonable attorney's fee? Your Honor, we believe that on this record, looking at clear errors of law, based upon the three clear errors of law that I've identified that constitute an abuse of discretion, that is the figure that is warranted based upon this appeal. So I just want to make sure I understand this, okay? So you're saying that if you get rid of the multiplier, get rid of any fees attributable to seeking clients, get rid of the hours attributable to enjoining the alternative recovery offers, you deduct all of that, it results in a fee award of $8 point—what is it? $3,733,000. $3,733,000. And you concede that that would be a reasonable attorney's fee? We concede that based upon the errors committed by the district court, that is the number that is warranted based upon those errors. You concede that would be a reasonable attorney's fee? That would be a reasonable attorney's fee based upon applying the— The Johnson factors. Well, the—applying Hensley, Bloom— Right. Delaware Valley, Your Honor. Okay. And I would reserve my remaining time. Mr. Canfield. May it please the Court. The only argument that Home Depot is making here that it made below is that it deals with the adequacy of the district court's order. And that order satisfied— The multiplier was inappropriate in the district court. They never argued that it was inappropriate because of federal fee-shifting cases. All of the— They— Your Honor, with all due respect, all of the cases that— That's frivolous. I mean, that's frivolous. They absolutely argued that a multiplier was inappropriate here as a matter of Supreme Court precedent. They—and if you go back and look at— 53-18-25, 54-14-23. I mean, there are all kinds of objections to the multiplier here. They clearly objected to the multiplier. They argued that there was no risk. Their argument was not that Perdue or Daig or the other fee-shifting statutes precluded the multiplier as a matter of law. They didn't even cite Perdue, Daig, or any of the cases they've cited in this court to the district court. And with regard to the other arguments— They argued, did they not, that class counsel should not be compensator for finding class representatives. They did argue that. Oh, no, they did not argue that. Never argued that below. And it never happened. There are two problems with that argument, Your Honor. One, the judge didn't compensate us for soliciting class representatives. That absolutely is not what happened. And there's absolutely nothing in the record that would suggest we spent $2 million, 17% of our total load start, looking for clients. That just didn't happen. So what we would assert is that what this court should do is look at whether— They would have objected to the lack of detail in the district court's award because it hadn't been done yet. That's correct. They didn't waive that argument. But the district court's order— So if they're right about that, we ought to send it back. If the court agrees that it can't meaningfully review what Judge Thrash did, sure. But there's no reason, there's no confusion about what Judge Thrash did. Home Depot asked them to apply the load start analysis, which he did. They made an attack on the ARO process, which he addressed. It's not the attack that they're making here. It was a different attack. But they did attack the ARO process. The judge addressed it. What's the difference in what they did about that there and here? What they did below was not argue that there was $1.4 million of our time that should be excluded. They said that there's no difference between the consumer track and the financial institution's track other than the ARO time. So that in doing a load start analysis in our case, the judge should use the same hours that were reported by the consumer lawyers in their case, which was a different case, different claims, took a year less time to settle, and the judge properly decided he couldn't use that time. It made no sense. And then with regard to the ARO process, what he did is quite simple. Home Depot wanted to communicate with absent class members. There's a local rule that restricts those communications. Home Depot moved for permission to approach the financial institutions with their ARO offers. While that motion was pending, class counsel found out that obviously misleading and coercive communications were going out to class members. Yeah, they claimed they didn't do those, right? That's not the issue. The issue is, did a class member release his or its claims based on misleading or coercive communications? Whoever made that. The communications occurred as part of the process of soliciting these releases. What class counsel did when we found out that there were these misleading communications went out, we sought relief from the court through a preliminary injunction motion. We asked for two things. He didn't get one, right? He deferred ruling on it. We asked for two things. We asked that he not allow these misleading and coercive communications go forward, and the way to do that was to require that Home Depot submit their communications in advance for the court to review. The second thing we asked is that the court invalidate any releases that had already been obtained. It didn't do that, did it? We never got to that issue. You got compensated for work that led to no relief. That's absolutely not true, Judge. Well, the things you asked for, the district court didn't do. Here's what happened. We asked the judge to prevent the communications unless they had court approval in advance and to invalidate releases that had been improperly obtained. They didn't do those things. No, what Judge Thrash decided to do was that based on the existing record, he couldn't do anything other than, and he didn't want to stop Home Depot from communicating altogether. So he made a very reasonable choice. What he decided to do was to require Home Depot to submit their solicitations and file them with the court, and then he said, I'm going to let you, plaintiffs, in fact, he directed us to take discovery into the various communications that were taking place, and then if we found that there were misleading and coercive communications, he would invalidate them, and Home Depot agreed that was the proper remedy if that occurred. So we went through an intensive discovery period that the judge oversaw throughout. He had four different hearings in a six-week period to closely monitor what we were doing. Home Depot kept arguing, this is a witch hunt. This is a witch hunt. Did you invalidate any of the offers? That issue never was decided because the case settled. The parties agreed to defer any ruling on whether there should be releases until after the settlement discussions because we knew if we got into that issue, it was going to mess up the discussions that were taking place. So we agreed to defer it. The judge never ruled on it. It hadn't been ruled upon at the time. So all the releases remained in effect and all the alternative recovery offers remained in effect. The result of the litigation was that the Home Depot had paid out $14.5 million in these ARO payments for class members that had released their claims. They were divided up into two different categories. Most of them were excluded from the class and they still had the right to challenge the validity of the release if they wanted to. The other group related to claims that the judge had already found on the record, or releases that the judge had already found on the record had occurred after misleading and coercive communications had been sent out. And so what he did, or what we did, is we agreed to set up a separate fund for those particular institutions. And if they came in and said we released our claims because we believe we were misled or coerced, there was additional compensation for them that they wouldn't otherwise have gotten. So with regard to the ARO process, every bit of work that we did was done at Judge Thratch's direction. He oversaw everything we did throughout the whole process and ultimately resulted in money in the settlement. So I'm not quite sure the basis for this argument that Home Depot is making. By the way, is this a fee-shifting case or a common fund case? It is a common fund case. Fee-shifting precedent has nothing to do with it. Home Depot agreed to pay this fee as part of a common fund settlement. I thought the settlement agreement said that Home Depot will pay attorney's fees quote, in addition to the settlement fund and confirmed that any attorney's fees, costs and expenses, quote, shall be paid separate from and in addition to the settlement fund. Isn't that what the settlement agreement said? Absolutely. And that's gone? That is, as a matter of law, then it's not a common fund. I totally disagree with you. It is common practice in class litigation and is in hundreds of reported cases including a lot of district courts in this circuit as well as other circuits. I think it's the 3rd and the 8th that have specifically addressed the issue. But it is a customary way of doing it. It's a good thing. What it does is allows the parties to separate the negotiations about the merits that would affect the class from the issue of attorney's fees. And so what the courts have done and what the manual and complex litigation says you're supposed to do is to treat the separate fee and the common fund as one economic entity. It's a constructive common fund. What's your best case for that? I don't recall the two cases. There are two circuits. I think it's the Johnson v. Comerica mortgage case and General Motors pickup truck litigation. One is 3rd and one is 8th circuit. And look at the manual and complex litigation. It says that's what you do. That is the prevailing practice. And if this court were to hold otherwise it would really shift the way that a lot of class settlements are negotiated. What it comes down to, what Home Depot says... There's not an 11th circuit case that says that, right? Not that because the issue's never been... Nor a Supreme Court case, right? No. I mean it's just a customary practice. So the question we have to answer is if the 8th circuit and the 3rd circuit have said that is whether their reasoning is persuasive. That's something this court can review but Home Depot doesn't dispute the logic of those cases. Their issue is a little bit different. But we can't make an error of law. If we're going to say that this is a common fund no matter what they say about that if that's what we're going to say is precedential in this circuit we've got to be careful about that, right? Yeah. And this is really important. What Home Depot says about the why this isn't a common fund case turns on a very unusual fact which is that Home Depot agreed, the parties agreed to let the court make the decision about how much the fee would be leaving the methodology to the court. That's why they distinguish all the other cases that say that fee shifting analysis doesn't apply including a case from this court just a month ago the Moransky case and what the Moransky case said is Purdue Home Depot agreed that it was going to pay an attorney's fee separate from the settlement fund, right? Absolutely. I don't see how then the settlement itself created a common fund from which the attorney's fees are paid. I hear what you're saying about what our sister circuits have said but that just doesn't strike me as how that can be a common fund. The amount is undetermined until the district court determines what a reasonable attorney's fee would be. That's right. Typically what happens is the parties agree on the amount of the fee and that amount is used to determine the total class benefit. The reason it's one package deal the money is coming from the same source. If the fee wasn't paid separately It is coming from the same source but it's not a package deal that parties have agreed to separate it out. But as one package it's part of one settlement. But there's nothing in the settlement agreement that says that the district court in awarding the fee should lump the two together and calculate it as a percentage from it. No. We left the methodology to the court and that's exactly the point because under Home Depot's approach the methodology that would be used whether it's fee shifting or common fund principles is up to an agreement or a disagreement between the parties. A court has an obligation to oversee the reasonableness of the fee and to exercise its independent judgment to do that and that applies whether there's an agreement or not. So that what Home Depot wants to do is take the tools away from the court and say you have to use fee shifting principles because we didn't agree on the amount of the fee. And that's going to Your counsel seems to be at rock bottom in this kind of case. You have to decide what is the rule of law that the district court is applying. You label You can drive the substantive rule by choosing a label. It's common fund or it's fee shifting. If you call it one thing, you use this standard if you call it another thing, you use another standard. It's not just a matter of So we have reviewed this case for abuse of discretion. We have to find the court abuses of discretion if it misapplies the law. Correct. So we have to decide what is the substantive rule of law that applies in order to decide whether the judge abuses discretion. If we don't do that, it's just it's unreviewable. Correct. Do you agree with that? I do. And the court has a response. This is not like private litigation between two sophisticated parties. You've got class members and everything. The court has an abiding responsibility to the public and that's another reason from my point of view that you have to really know what is the rule of law that applies. That's right. So what we have is an argument here that we don't know. You say it's one and she says it's the other. The parties agree. The question becomes whether the parties put aside the class members can get together and make their own deal. I don't That affects appellate review. You're making an argument in part that Home Depot basically gave away some points for purposes of appellate review. I speak for myself that's what makes one of these situations almost incapable of unless the district judge tells us exactly how did he get to the extraordinary circumstances for example. What were they? Anyway that's my little speech. Well I think that in if the court decides that the legal standard needs to be made more explicit even though the parties agree that as far as Lodestar goes it was appropriate for the judge to use that standard then He has to tell us how he did it though. Well I think he did. He just accepted everything y'all said about it? Home Depot didn't challenge any of the entries in our billing records or even chunks of time. Home Depot never even asked to see our billing records and the reason that we've said and they haven't denied is that if they had asked to see our billing records which we submitted to the court on a quarterly basis for his review that we would have asked to see the bills of Home Depot's lawyers because those would have dealt with the reasonableness of things and those bills would have shown that Home Depot's lawyers were charging higher rates spent more time than we did and were paid vastly larger amounts of money than we're seeking. That was their tactical decision. So they never gave Judge Thrash did a thorough job of reviewing the issues that Home Depot raised. What they're criticizing him for is abusing his discretion for not doing things that they didn't ask him to do. They never asked him to do a Johnson analysis if a Lodestar approach was used for example. And it is a very rare case when this court holds that a judge has abused his discretion when he didn't consider arguments that were never raised to him. And this is not that kind of a case. Thank you. I think we have your case. Mr. Dawson. What about that? I mean his argument is that Judge Thrash responded to the arguments you made and then you faulted him for things that you never asked him to do. That's utterly false. The Home Depot raised specifically that the contingent nature of the fee does not support plaintiff's request for an upward adjustment. That addressed the point of no enhancement to the Lodestar for contingency or Did you say, did you make it clear in the district court he was to use the Lodestar? Yes, we made it very clear. Did you make it clear in the district court that a multiplier was inappropriate for the same reason that you're arguing now? Yes. Because we said, and this is a direct quote from our briefing, the contingent nature of the fee does not support plaintiff's request for an upward adjustment. That is taken verbatim from our Your Honor, we cited to you the CEDA, the fifth third bank case that permits issues to be raised for the first time on appeal in five discreet circumstances so to the extent the court finds any of these arguments persuasive, it should still nevertheless consider the issues raised by Home Depot because they are purely legal questions and refusal to consider them result in a miscarriage of justice. In addition Your Honor, I want to address the point he made about the ARO process. What he leaves out is that on December 8th, they filed their motion for preliminary injunction. On December 11th we oppose. On December 14th was a hearing. The Home Depot filed a motion affirmatively letting the court know about these communications about our ARO settlement process and we submitted a proposed order to the court. What Mr. Canfield doesn't indicate is that on the day of the hearing, the court granted Home Depot's motion, entered the order that we prepared allowing the ARO process to go forward. Is the transcript of that hearing in the record? I believe so, Your Honor. I believe it is. In fact, the Home Depot won the hearing on December 14th by having its proposed order entered. Your Honor, I want to address the common fund issue. This is not a constructive common fund. Let's settle one thing. The 3rd and the 8th Circuit have held what he says they've held, right? Not quite, Your Honor. A constructive common fund involves two agreed upon amounts. The fund to be paid to the class and an amount to be paid in fees. In all the cases cited, let's talk about Johnston 1st from the 8th Circuit. There was a clear sailing provision in which the defendant agreed to pay up to a specific amount of money, a finite amount, and to not object if the fee award did not exceed that amount. It was $57,500. In that sense, there is an agreement between the plaintiff and the defendant as to the attorney's fees up to a fixed amount. And an understanding that it might be above that amount and that that amount would come from the rest of the settlement. Well, it did not say that specifically, but yes. That was the reasoning of the court, right? Correct. And in the 3rd Circuit, that was another constructive common fund case. The facts of that case are very important. The plaintiff filed a fee petition. GM did not file any objection to the fee application. In other words, GM agreed with the amount of the attorney's fees, the $9.5 million. So in both those instances, there's an agreement. So yes, there is an agreed-upon fund. Yeah, but it agreed to that amount, but did the district court award an amount above that? No. Actually, in that case, the court vacated the order and remanded. There were a lot of other issues that the Circuit was concerned with with that particular settlement, and so they essentially vacated everything and sent it back. But those factual distinctions are important. With a constructive common fund, there's either an agreement as to the amount of attorney's fees. There's a clear sailing provision in which the defendant agrees up to a certain amount. There was something about the reasoning of both of those courts that was not necessarily persuasive in that they said, well, the money's all coming from the same source and that makes it a common fund because it's a packaged deal. Well, if that were true, then every settlement where there's an agreement that there will be an attorney's fee award would be a common fund. That's exactly right, Your Honor, and that's why the federal fee-shifting jurisprudence should apply here because this is like a federal fee-shifting statute in which the Home Depot agreed to pay reasonable attorney's fees. I think we have your case. Thank you very much. Thank you. We'll be in recess until 9 in the morning.